José Suárez Fuentes, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, Willis Ramos Vázquez, Judge, Respondent; Heirs of Agapito López Casanovas, Interveners.

No. 2876.    Decided April 23, 1963.

134

*Víctor Gutiérrez Franqui, Federico Ramírez Ross,* and *Carlos G. Látimer* for petitioner. *Ricardo R. Rivera Correa* for interveners. *Víctor A. Coll* for amicus curiae.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On March 26, 1931, Marcial Suárez Suárez filed an action of debt against the heirs of Agapito López Casanovas, consisting of his minor children, Rubén, *Amelia,* and *Benjamín* López Cepeda under the tutorship of their grandmother Dolores Cepeda, alleging that on March 12, 1927, the aforesaid predecessor Agapito López Casanovas acknowledged owing to Marcial Suárez Suárez, in turn the predecessor of petitioner herein, the sum of $1,475 which he was bound to pay with interest at one percent monthly, in the period of three years beginning March 12, 1927. To guarantee said

debt Agapito López Casanovas mortgaged in favor of Marcial Suárez Suárez, by deed No. 40 of March 12, 1927 executed before notary Luis Sánchez Vahamonde, the following properties: (a) rural farm of ten cuerdas and twelve hundredths in the ward Medianía Alta of the Municipality of Loíza; (b) rural farm of one cuerda in the same ward and also a one half interest that said Agapito López Casanovas held in the following properties: (1) rural property of two cuerdas and twelve hundredths in the same ward of Medianía Alta; (2) rural property of two cuerdas in the same ward; (3) rural property of fifty hundredths of a cuerda in the same ward, and (4) a one-story house of recent construction of native and foreign wood, zinc roofed situated in the property described above under No. 2. The other half interest, according to the deed, belonged to the children of Agapito López Casanovas, named Rubén, *Amelia*, and *Benjamín* López Cepeda, had in his marriage with Margarita Cepeda, who had predeceased him on May 13, 1922.

On March 26, 1931 a summons was issued addressed: "To the heirs of Agapito López Casanovas, consisting of his minor children, Rubén, *Amelia*, and *Benjamín* López Cepeda, under the tutorship of their grandmother Dolores Cepeda" and in the certificate of service by a private person, it is stated by the server Celedonio Ortiz, 57 years of age, single, industrialist and resident of Río Grande, Puerto Rico, the following return is stated: "That at one o'clock in the afternoon of March 27, 1931 I personally notified it (the summons) to Dolores Cepeda, as well as to each one of the minor children named Rubén, *Amelia*, and *Benjamín* López Cepeda." Subsequently the same server notified the attachment executed on the same mortgaged property stating: "I proceeded to notify the attachment on the same April 8 to the persons mentioned in said notice and who are: Dolores Cepeda, Rubén, *Amelia*, and *Benjamín* López Cepeda."

It is rather curious that in the description of the defendant party contained in the complaint of March 26, 1931, as well as in the enumeration of the persons summoned contained in the service and the notice of attachment it is stated that the names of the minors under tutorship are Rubén, *Amelia*, and *Benjamín* López Cepeda, while in the order for declaration of heirship in civil case No. 20,588, entered on March 19, 1934 by the former District Court of the Judicial District of San Juan, filed by plaintiff himself Marcial Suárez Suárez, the persons designated as heirs of Agapito López Casanovas and Margarita Cepeda are his children Rubén, *Aurelia* and *Benjamina*. It seems that the correct description of the heirs is the one contained in the order of declaration of heirship. It is likewise curious that nowhere in the procedure is any reference made of the judicial steps taken for the appointment of Dolores Cepeda as tutrix of her minor grandchildren, which fact buttresses the allegation of the intervener heirs that, as a question of reality, Dolores Cepeda was not the tutrix of the defendant minors when the complaint was filed and when she was summoned as such tutrix.

The heirs of Agapito López Casanovas which appears as "the defendant succession" through their attorney Mr. Luis Apellaniz Storer, denied in their answer, generally and specifically, all the facts alleged in the complaint and they further alleged "that on or about March 12, 1927 (date when the mortgage was constituted) Agapito López Casanovas, father of the minor children who are his heirs, did not have the necessary legal capacity to perform contracts of any kind (and) that the property described in the complaint under letters (a) and (b) as well as the other properties described therein, belonged at the time mentioned in the preceding paragraph to Agapito López Casanovas and his minor children jointly and undividedly." It seems to be that the incapacity of the father at the moment of signing the

mortgage deed was that he was considered mentally insane.

As to the description of the acquisitive title of the father what appears in deed No. 40 of March 12, 1927 executed before notary Luis Sánchez Vahamonde is the following: It is said that the property of ten cuerdas and twelve hundredths, described under letter (a) was acquired by Agapito López Casanovas "by purchase from several persons in this proportion [sic] of one cuerda from Isabel López; five cuerdas from Lorenzo Casanovas; two cuerdas from Estanislao Pizarro and his wife Isabel López, and the twelve remaining hundredths from Eugenia López." The property of one cuerda described under letter (b) is said to have been acquired by Agapito López Casanovas "by inheritance from his parents Fidel López and Vicenta Casanovas." It is interesting to note that in the relation of the title of the property described under letter (a) as well as in the descriptions under numbers one and two which are admitted to be conjugal property, the same pattern of description is followed, indicating from whom the parcels of land were acquired but without stating the date of acquisition, and the only saving clause of a separate nature by inheritance is made as to the property of one cuerda described under letter (b). Which shows that the second averment of the answer to the effect that all the properties belonged jointly and undividedly to the father and his children is favored by the presumption of community property. Neither in the mortgage deed nor in the order of declaration of heirship, made at the request of Marcial Suárez Suárez himself, appears the date of the marriage of Agapito López Casanovas with Margarita Cepeda.

The heirs, interveners herein, did not appear to defend themselves and on March 23, 1934 the former District Court entered judgment ordering *Rubén, Amelia* and *Benjamín* López Cepeda to pay to plaintiff "the amount of $1,475 principal, $708 interest accrued until March 4, 1931, date of the complaint, and whatever interest might accrue until

final payment; at the rate of 1% monthly, plus $150 stipulated for costs, expenses and attorney's fees."

On October 3, 1934 an order was issued to foreclose the property and on October 26, 1934 the public auction was held and all of the two properties described under letters (a) and (b) and a one half interest of the property and buildings described under numbers (1), (2) and (3) were adjudicated to plaintiff himself, Marcial Suárez Suárez.

In order to have a complete picture of the facts it is fitting to indicate that according to the record it was impossible to record the mortgage executed by Agapito López Casanovas, because the property did not appear recorded in his name, according to the note of the Registrar of Property of San Juan of December 24, 1927. As to the attachment, on March 31, 1931 a general order of attachment was issued; on April 6, 1931 plaintiff pointed out to the marshal all the property mortgaged; on April 7, 1931 the marshal sent an order to the Registrar of Property of San Juan referring to the writ of attachment of March 31, 1931 and asking him to enter the attachment on the mortgaged properties, which entry of June 14, 1932, that is, a year later, reads thus: "The properties mentioned in this order having been recorded in the name of Agapito López Casanovas, marginal notes are entered at the foot of the attachment previously named, indicating on the margin of the preceding descriptions, that said attachment is definitively entered in favor of Marcial Suárez Suárez, without the defect that the property had not been recorded." In the property described in the mortgage as well as in the complaint and in the order of attachment under letter (a), the entry was made at volume 22 folio 121 back, property number 965, marginal note of entry B; the property described under letter (b) at volume 22 folio 125 back, property number 966, marginal note of entry B; the one described under number (1) at volume 22 folio 128 back, property number 967, marginal

note on entry B; the one described under number (2) at volume 22 folio 131 back, property number 968, marginal note of entry B; the one described under number (3) at volume 22 folio 134 back, property number 968, marginal note at entry B; the property described under number (4) at volume 22 folio 134 back, property number 968, marginal note at entry B. The record does not show whether this registration was made by a previous registration of the former titles of Agapito López Casanovas, by a dominion title proceeding or by a simple operation in the registry of the entry of attachment.

The reasons why the interveners did not appear to defend themselves when the case was set for hearing, according to the averments of the motion filed by the heirs on April 5, 1961 in the Superior Court of Puerto Rico, San Juan Part, were the following: "That their grandmother, in her poor economic condition, contracted the services of an attorney who answered the complaint in this case in the name of petitioners herein raising defenses of great weight such as that Agapito López Cepeda (Casanovas) was unable to execute the mortgage (which was being) executed, but that neither before the complaint was answered nor during the proceedings, nor at the hearing, was the general tutor or guardian ad litem designated to represent the minor defendants in this case adequately for which reason they never appeared before this court (and) that having learned of the steps taken by the grandmother of the minors in answering the complaint, plaintiff Marcial Suárez, through himself and through his agents, approached said grandmother and asked her not to proceed with the defense of her grandchildren, assuring her that if she abandoned the matter he would always leave them part of the property in which the paternal house was located, but that if she persisted in their defense, he would evict them all from the property without any consideration when he won the case (and) that

deceived with his promises and fearful of prejudicing her grandchildren the grandmother abandoned them in their defense and did not appear on the day of the hearing set and the court rendered judgment in this case with the sole appearance of the plaintiff (and) that after obtaining judgment plaintiff not only did not comply with his promise to the grandmother of the minors, but that in pursuit of his original purpose he took possession of all the property in the case, notwithstanding the fact that the one-half undivided interest that the minors had in the property of 2.12 cuerdas, 2.00 cuerdas with house and half a cuerda, were never the object of a mortgage, nor of a foreclosure nor of adjudication (and) that the plaintiff thereafter kept the defendant heirs of Agapito López Casanovas under the impression that he had foreclosed everything, and that all the properties belonged to him, with their exclusion and the most that they could obtain from him, through an uncle of theirs, when they grew older, was that he should grant to them half a cuerda of land each for the construction of their respective homes, in the property half of which belonged to them (and) that the defendants were humble people, poor and ignorant and that only recently they learned incidentally that (a) they were the defendants in this case; (b) that it has been falsely alleged that they were personally summoned when actually they were not; (c) that they were entitled by law to have a general tutor designated or guardian ad litem which was not designated to them, leaving them defenseless; (d) that plaintiff manipulated with false simulations and promises with their maternal grandmother in order that the latter would abandon their defense which she had commenced, obtaining his purpose with threats that they would lose everything otherwise; (e) that irrespective of the judgment in this case and its consequences they continue being the owners of a one-half interest in three of the properties foreclosed, notwithstanding the action of plaintiff in taking pos-

session of all of them in their entirety (and) that plaintiff acted fraudulently in obtaining judgment in this case with misrepresentation to the effect that the grandmother was the tutrix of the minors; with false pretenses that he would consider her grandchildren if she would not continue with their defense; he obtained an undue advantage over the plaintiff minors leaving them defenseless, without asking the court for the appointment of a guardian ad litem for them and keeping them ignorant of their true rights; and the judgment rendered against the minors under these circumstances is unjust and contrary to equity, without the defendants having earlier learned of these irregularities and their consequences, nor were they able because of the extreme poverty in which they found themselves as a result of plaintiff's action in a condition to challenge it up to now (and) that no other person would be prejudiced with the action of this court in setting aside the judgment of this case, since the registry shows that the property of 10.00 cuerdas and of 1.00 cuerda are still recorded in the name of Agapito López Casanovas, defendants' father, and the other properties are recorded by one-half in the name of Agapito López Casanovas and one-half in the name of defendants herein, without there being any knowledge whatsoever that the marshal executed a deed of sale in favor of plaintiff, who notwithstanding this, continues in possession thereof."

In the prayer they ask the respondent court (1) to set aside the judgment rendered in this case as erroneous; (2) to reinstate the defendants in the possession of the rural properties foreclosed by an erroneous judgment rendered, and (3) to enter any provision in equity to which the minors are entitled. Copy of this motion was sent by registered mail on April 5, 1961 to Juan Suárez, Juan Suárez Miranda, Encarnación Fuentes de Suárez, and José Jesús Suárez Fuentes, who appear to be the heirs of Marcial Suárez Suárez. Of these persons, only Encarnación Fuentes widow of Suárez

refused to receive the copy of the motion, according to the corresponding post office return. In the original motion against the judgment rendered there is an annotation in the handwriting of a judge of the Superior Court of Puerto Rico, San Juan Part, which reads thus: "Set special calendar May 19—2:00 P.M. Notif. Mr. R. R. Rivera Correa, Mr. L. Sánchez Vahamonde, Mr. Juan Suárez Fuentes, Mr. Juan Suárez Miranda, Mrs. Encarnación F. widow of Suárez, Mr. José Suárez 5-15-61." Using one of the models of orders of the judge of the Court, the clerk, Adelle R. de Morales, notified the hearing for May 19, 1961 at 2:00 p.m. It seems that the mimeographed model said "at nine in the morning" but written over said hour there appears inserted by hand the time "2:00 P.M." As a result the only attorney who appeared that day, it seems, to represent José Suárez Fuentes, appeared at 9:00 a.m., confining himself to submitting the question to the court, and the attorney of the heirs, interveners herein, appeared at 2:00 p.m., and when he learned that the question had been submitted to the only member of the heirs who had appeared, he in turn submitted the question by motion filed on the same May 19, 1961, to which he attached a memorandum.

The question having been thus submitted, the trial court, after summarizing procedures of notice, setting of the case, and how it has been submitted by the parties, and stressing the point that it did not appear from the record nor had it been established in any way that Dolores Cepeda had been appointed as tutrix of her grandchildren and that it did not appear that any guardian ad litem had been designated to the minor defendants, it reached the following conclusion: "If as has been seen, in the case under consideration the minors were not actually under any special tutorship of their grandmother designated by the court to represent them, the judgment entered against them is erroneous and may be set aside by motion to the court which entered it. To that

effect our Supreme Court has said: 'The prevailing rule in the United States is that judgment rendered against a minor or an incapacitated person for whom a guardian or tutor has not been appointed is not void, but erroneous.' *Tyrell* v. *Saurí*, 71 P.R.R. 429, 439 (1950), (and) already in a previous case it has said, copying from American Jurisprudence: 'The appointment of a guardian *ad litem* for an infant defendant, like the appearance of a next friend for an infant plaintiff, is matter of procedure and not of jurisdiction. That either plaintiff or defendant was without such representative makes the judgment *erroneous*, but not void. It can be overthrown by writ of error *coram nobis*, or by motion in the same court, or by proper appellate proceedings; but, it is generally held that the validity of the judgment cannot be attacked for this reason in a collateral action, in which the judgment comes only incidentally in issue.' *Trueba et al.* v. *Martínez et al.*, 33 P.R.R. 446, 458 (1924)."

Having reached this conclusion the trial court set aside as erroneous the judgment rendered by the court in civil case No. 14,264, the foreclosure thereof performed by the marshal and any deed executed by him and in favor of plaintiff Marcial Suárez Suárez, as well as any registrations thereof which might have been produced in the registry of property reinstating said heirs of Agapito López Casanovas as full owners of the property and rights which had been foreclosed to their predecessor in the case and ordering the marshal to place said heirs in possession of the property. The order was notified to the attorneys concerned according to the record and to the "heirs of Suárez" according to the certificate of service by mail attached to the record by the clerk of the Superior Court of July 21, 1961.

On August 11, 1961 Juan Suárez Fuentes represented by Mr. Víctor A. Coll, requested the reconsideration of the order rendered by the trial court on July 18, 1961 on the following grounds: (a) Assuming that the defendants in

action No. 14,264 were entitled to a writ of coram nobis, the form and manner that the same was notified to them is not the proper proceeding to vest the court with jurisdiction over the persons to whom the writ of coram nobis was served; (b) that it was known by said defendants that the plaintiff in action No. 14,264, Marcial Suárez Suárez, had died in 1949 leaving several heirs one of whom was the petitioner in this motion, for which reason he should have been given his day in court, by virtue of the proceedings established in the Civil Code of Puerto Rico; (c) that the order entered assumes as facts proven certain *"issues"* which should have been subject to proof by virtue of the appearance of the parties to prove at the trial the groundless and false allegations of the writ of coram nobis; (d) that even assuming the validity of the writ of coram nobis, it is only valid when it clearly appears from the record itself that there were errors of fact which were not controvertible in the original suit or that were unknown to the court who tried the case at that time and therefore, they were not controvertible and it is a well-settled rule that the merits of the original controversy are not questions to be presented in a writ of coram nobis, since the right to a writ of coram nobis rests in the error of fact unknown to the defendants themselves in the original case, and (e) that the petition for coram nobis filed on April 4, 1961 with respect to an order entered in 1934 is not only a collateral attack wantonly presented to destroy the actions of a court executed 25 years ago, but in that manner it supersedes and substitutes the statutory right of revendication which is the remedy granted by our statutes to the parties in order to justify the granting of a relief against the effects of a judgment.

The trial court disposed of the motion for reconsideration, pursuant to Rule 47 of the Rules of Civil Procedure because the order of July 18, 1961 having been entered and notified on July 21, 1961, the motion for reconsideration

filed on August 17, 1961 was untimely. If the trial court had decided to pass on the grounds of the motion it could have disposed thereof with the same ease for the following reasons: (a) The remedy of coram nobis of a civil nature—today substituted by the remedies provided by Rule 49.2 of the Rules of Civil Procedure—is presented as a motion within the same action whose judgment is sought to be set aside for extrinsic fraud—*Martínez* v. *Superior Court*, 83 P.R.R. 345, 352 (Santana Becerra) (1961) and pursuant to Rule 67.2 said motion may be served by mail and not by summons as required in the case of annulment by independent action; (b) although the substitution of party was not requested, the motion requesting the annulment and the setting of a hearing were notified by registered mail to all the heirs of Marcial Suárez Suárez. Since the proceedings established by our Civil Code are not the only ones established to obtain annulment by error, the service made in this case was sufficient to give the party his day in court; (c) since the party did not appear, after having been duly summoned to allege against the verified motion in which the fraud was alleged, and it appearing from the very record that one of the extrinsic frauds existed—the failure to obtain the appointment of a special tutrix or the judicial authorization for the grandmother to represent the minor defendant grandchildren—the court had inherent authority to correct its own actions by setting aside the erroneous judgment, as a simple question of law; (d) although in the petition for coram nobis of a criminal nature the rule is that it is not proper, in its classical form, if it is not alleged and proved that the facts on which the motion is based were unknown to the court at the time of rendering its judgment, and that if it had known them the result of the judgment would have been changed, such rule does not exist for a motion for the nullity of judgment by error in a civil action based on fraud to the court. Assuming that such analogy exists, it is unquestionable that

in this case the court did not know, contrary to the allegation of plaintiff in action No. 14,264, that the grandmother Dolores Cepeda was not the tutrix of said minors; (e) the petition for nullity of a judgment within the same action producing it is not a collateral attack against the judgment. If it were, the defense of collateral estoppel could not be used to perpetrate an injustice. *Viera* v. *Racing Commission*, 81 P.R.R. 688, 701 (Saldaña) (1960); *Millán* v. *Caribe Motors Corp.*, 83 P.R.R. 474, 488 (Rigau) (1961). The action of revendication, whenever proper, does not exclude the use of the motion for nullity of judgment by error established by Rule 49.2 of the Rules of Civil Procedure.

■■ Against the order setting aside the judgment by mistake, Encarnación Fuentes widow of Suárez and José Suárez Fuentes, as heirs of Marcial Suárez Suárez filed this petition requesting the correction of said order because it was a question of procedure. Thereafter, they pray that Encarnación Fuentes widow of Suárez be eliminated from the petition because her inclusion as petitioner was an involuntary mistake. It was this same lady who refused to receive the registered letter containing a copy of the motion requesting the annulment of the judgment. The fact that she withdrew from the petition of certiorari and that she refused to receive the copy of the motion by mail, does not exclude her from the jurisdiction of the court because, pursuant to the last provision of Rule 67.2, service by mail is perfected when it is deposited in the post office. Furthermore, no court would be willing to favor such an obstinate conduct.

The only petitioner now, José Suárez Fuentes, complains that the trial court set aside the judgment by mistake before deciding certain questions of law presented orally by the petitioner when he appeared at the hearing set for May 19, 1961, at 9:00 a.m. instead of at 2:00 p.m. According to petitioner's brief the questions of law presented orally seeking the dismissal of the motion for annulment, were three:

(1) that the petitioner had not been summoned, (2) that the petition for nullity constituted a collateral attack against the judgment, and (3) that the petitioner had not appeared at the hearing. We already passed on the second question upon examining the merits of the motion for reconsideration filed by Juan Suárez Fuentes. As to the third question, we have already explained the error in the hour of the setting of the hearing according to the records themselves.

As to the allegation that the heirs of Marcial Suárez Suárez should have been served with a copy of the complaint and not summoned, a point on which we have already passed, the only new ground adduced is that the lack of said service deprived the petitioner of having presented the defense of res judicata. The defense of res judicata does not lie in an allegation of fraud—*Bolker* v. *Superior Court; Sosa, Int.*, 82 P.R.R. 785, 793 (Blanco Lugo) (1961); *Aybar* v. *Vara*, 51 P.R.R. 182, 184–186 (Córdova Dávila) (1937). Nor does the defense of res judicata lie if it tends to defeat the ends of justice—*Pérez* v. *Bauzá*, 83 P.R.R. 213, 218 (Blanco Lugo) (1961); *Viera* v. *Racing Comm'n*, 81 P.R.R. 688, 700 (Saldaña) (1960).

The other questions not covered by this opinion presented in this certiorari are the following: (1) That the respondent court decided that the minors in question were not under the tutorship of their grandmother nor that they had a guardian ad litem without having any basis in the record to reach such conclusions; (2) that the court decided that the defendants were not summoned in the case because it appears from the summons, clearly by mistake, that Benjamín was summoned instead of Benjamina López Cepeda and Amelia instead of Aurelia López Cepeda, notwithstanding the fact that said persons were duly identified in the caption of the case as the heirs of Agapito López and his minor children; (3) because even though those persons were not

summoned they submitted to the jurisdiction of the respondent court by appearing at the court represented by counsel and by raising questions of law which challenged the jurisdiction of the court over the person; (4) because the proceeding followed in the present case is not provided by the Rules of Civil Procedure, particularly because it was not filed within the term provided by Rule 49.2.

1. The petitioner always assumed that the motion requesting the court to set aside the judgment by mistake was barred, that it required a new summons, and that it did not lie because it was a collateral attack against the former judgment and it did not answer the verified motion of the petitioner in which it was alleged that the grandmother Dolores Cepeda was not the tutrix of the minor defendants. The effect of having submitted the challenge against the judgment on said grounds of law solely, was to admit the fact that Dolores Cepeda was not the tutrix of said minors. Furthermore, if in all truth Mrs. Cepeda was the tutrix of said minors it would have been easy to allege it and prove it with the very records of the respondent court. It is well to bear in mind that at the time of setting aside a judgment by mistake the court acts by virtue of the inherent power recognized to it by the case law, to correct its own proceedings, including taking judicial notice of its own records. Even in the petition before this court, it is not affirmatively alleged that Dolores Cepeda was the tutrix of said minors at the time that action No. 14,264 was commenced. And even assuming that she was the tutrix, there is no showing in the record of case No. 14,264 that she was authorized to defend her wards—2 Manresa, *Comentarios al Código Civil Español* 442, Sixth Edition Reus 1944. As may be noted, this is but a case of a procedural subtlety, whose only purpose would be to delay the lofty objectives of justice.

2–3. Since it was not a summary-foreclosure proceeding —as a matter of fact the mortgage was never recorded— with its peculiar system of notifying any person with an alleged interest or in charge of the property, with its very reduced causes for challenge, but an action for the recovery of an obligation by deed, there was need of issuing summons and acquiring jurisdiction over the defendants. Although the respondent court, according to the showing in the record, reaches the conclusion that the errors in the name and the change of sex of the parties described showed that the court had not acquired jurisdiction over them, the true ground for its resolution in setting aside the judgment was the lack of representation and authorization of the tutrix to bind the minors in any way to the judgment by default.

4. The mere lapse of time is no reason for setting aside the resolution declaring the former judgment erroneous by extrinsic fraud, such as the one in the present case— *Martínez* v. *Superior Court*, 83 P.R.R. 345, 351–57 (Santana Becerra) (1961).

The writ issued should be set aside.